THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8               AT SEATTLE

9    OMARI TAHIR,                          CASE NO. C15-2017-JCC

10                      Plaintiff,          ORDER GRANTING MOTION FOR
                                            PARTIAL SUMMARY JUDGMENT
11          v.

12   MARGARET DELANEY, and
     MIDTOWN CENTER, LLC,
13
14                      Defendants.

15   MIDTOWN LIMITED PARTNERSHIP,

16                      Counterclaim Plaintiff,

17          v.

18   OMARI TAHIR,

19                      Counterclaim Defendant.

20   MIDTOWN LIMITED PARTNERSHIP,

21                      Third-Party Plaintiff,

22          v.

23   THOMAS F. BANGASSER,

24                      Third-Party Defendant.

25          This matter comes before the Court on the motion for partial summary judgment by

26   Defendant/Counterclaimant MidTown Limited Partnership (Dkt. No. 41). Having thoroughly

considered the parties' briefing and the relevant record, the Court finds oral argument

unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I.   BACKGROUND

This case stems from a family dispute over 2.4 acres of property located in the heart of

Seattle's Central District, a neighborhood historic for African-American community and

commerce,[1] currently undergoing rapid development and gentrification. (Dkt. No. 37-2; Dkt. No.

47-4). Defendant/Counterclaimant MidTown Limited Partnership ("the Partnership") owns the

subject property ("the Property") that consists of nine tax parcels located on 23rd Avenue

between East Union and East Spring Streets. (Dkt. No. 11 at ¶ 2.) The Partnership is made up of

four siblings: Third Party Defendant Thomas Bangasser, Defendant Margaret Delaney, Carol

Zarek, and Elizabeth Hall, and an entity owned by a fifth sibling, Hugh Bangasser.[2] (Dkt. No. 31

at 1.) Two of the Property's parcels were purchased by the siblings' grandfather in 1941 and

since then, seven additional parcels were acquired. (Dkt. No. 37-2.) The Partnership's land

acquisition was aided by grants from the federal government designed to "assist the distressed

African America[n] area", including Community Development Block Grant Funds.[3] (Dkt. No.

16 at 1–2; Dkt. No. 37 at 4.)

Throughout the years, the Property has been home to "many local African and African

American businesses." (Dkt. No. 37-2.) Plaintiff Omari Tahir, an African American and a

Central District resident for the past 69 years, has been living in a home on the Property for nine

years. (Dkt. No. 16 at 1–2.) Mr. Tahir has provided "security, maintenance and public relations

---

[1] William Grose, Seattle's first black homeowner, came to Seattle in 1860 at the urging of
Washington Governor Isaac Stevens and helped form an underground railroad. (Dkt. No. 47 at 3;
Dkt. No. 47-4.) His former home is located several blocks from the Property. (*Id.*)

[2] For purposes of clarity, the Court herein refers to the Bangassers by their first names.
The Court intends no disrespect.

[3] The Partenrship disputes this fact. However, on a motion for summary judgment the
facts are taken in the light most favorable to the non-moving party, here, being Third-Party
Defendant Thomas Bangasser and Plaintiff Omari Tahir.

services to all tenants of the nine MidTown real estate parcels" located on the Property. (Dkt. No. 37 at 3.) Seattle artist and poet James Washington Jr. sculpted a "Fountain of Triumph" located on the property, representing the "Cycle of Life" in the African American community. (Dkt. No. 47-3.)

Thomas was the Partnership's general partner for 27 years, until 2015. (Dkt. No. 27 at 7; Dkt. No. 31 at 1.) While serving as general partner, he increased the Partnership's real estate holdings in value from $1 million in 1988 to over $40 million in 2015. (Dkt. No. 37 at 7.) The partnership was dedicated to ensuring the Property is used to honor the neighborhood's history. In a 2013 interview, Thomas's brother, Hugh, was asked why the Partnership was pursuing an Enactus project with Seattle University when they "could simply sell the property to a developer." (Dkt. No. 47-7.) He answered:

> Five generations of Bangassers have benefited from our grandparent's investment seven decades ago. "Union Street 98122" represents core social, ecological and economic values which we share with this neighborhood and wish to carry forward. Simply selling the property is an easy solo economic decision . . .  however, building a thriving sustainable, diverse neighborhood as part of our exit is far more consistent with the value bestowed by our parents and reinforced by the teachings of the Jesuit institutions we attended. They and the great project this can be become our family's legacy.

(*Id.*)

Thomas, as the Partnership's general partner, stated in a "Value Proposition" that the Property needed to be redeveloped and that the Partnership intended for a future owner to "build upon the entrepreneurial black leadership by our tenants" and ensure the Property is used as a "living tangible example that 'Black Lives Matter.'" (Dkt. No. 37-2.) According to Thomas, he "negotiated a contingent/conditional 'Right of First Refusal' with Seattle's African American community [including Mr. Tahir] to ultimately purchase the [Property ] as part of its 'Black Lives Matter' initiative to address ownership, jobs and opportunities for people of color." (Dkt. No. 37 at 7.)

After this historic commitment to honoring African American commerce and community,

ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT
PAGE - 3

1    the Property has been ridden with disputes and litigation.

2         On June 22, 2015, Thomas's siblings voted to remove him as general partner and

3    replaced him with his sister, Ms. Delaney. (Dkt. No. 27 at 7; Dkt. No. 31 at 1.) In October 2015,

4    the Partnership entered into a purchase and sale agreement to redevelop the Property. (Dkt. No.

5    31 at 3.) The purchase and sale agreement subsequently lapsed in January 2016. (Dkt. No. 31 at

6    2.)

7         On December 28, 2015, Mr. Tahir initiated this action, alleging racial discrimination

8    under Title VI of the Civil Rights Act of 1964 and state law claims of assault, defamation, and

9    adverse possession against the Partnership and Ms. Delaney. (Dkt. No. 1-1.) He also filed a lis

10   pendens on the property which clouded the title. (Dkt. No. 10 at 3.) On April 21, 2016, this Court

11   dismissed Mr. Tahir's adverse possession claim and on June 16, 2016, this Court ordered the lis

12   pendens to be expunged. (Dkt. Nos. 18 and 33.) The other claims remain pending. (*Id.*)

13        On May 17, 2016, Ms. Delaney was removed as the general partner and replaced by an

14   entity managed by her brother, Hugh. Three days later, the Partnership entered into another

15   purchase and sale agreement with an all-cash buyer. (Dkt. No. 31 at 2.) The Partnership explains

16   that the siblings "are getting older" and for "personal and financial reasons" wish to sell the

17   property "to the highest all-cash offeror."(Dkt. No. 41 at 3.)

18        As a part of the redevelopment, the home Mr. Tahir resides in will be demolished. (Dkt.

19   No. 31 at 3.) While this lawsuit has been pending, the Partnership filed an unlawful detainer

20   action to remove Mr. Tahir and individuals he is hosting who have been displaced from their

21   homes. (*Id.*)

22        On June 1, 2016, the Partnership filed a third-party complaint against Thomas and his

23   marital community, alleging that to the extent Mr. Tahir proves Thomas granted him a right, title

24   or interest in or to the Property, Thomas is liable to the Partnership for any resulting loss or

25   damages. (Dkt. No. 28 at 6.) In his answer, Thomas alleges that the Partnership granted a right of

26   first refusal to the Africatown Community Land Trust, a group that includes Mr. Tahir. (Dkt. No.

37 at 2–4.) As a member of the African American community and as a tenant of the Property, Thomas argues that Mr. Tahir has indeed experienced a violation of his rights. (*Id.*) Finally, Thomas alleges that the Partnership has "secretly negotiated" to sell the Property without providing adequate notice. (*Id.* at 4.)

The Partnership now moves for partial summary judgment on Thomas's and Mr. Tahir's claims that there was a right of first refusal and asks the Court to order Thomas to cancel the lis pendens he filed on the Property. (Dkt. No. 41 at 16.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.    Validity of Right of First Refusal

The Partnership argues that the alleged right of first refusal is void and unenforceable because it was never reduced to a writing signed by both parties, as required by the statute of frauds. (Dkt. No. 41 at 7.) The statute of frauds applies to "[e]very conveyance of real estate, or

ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT

1  any interest therein, and every contract creating or evidencing any encumbrance upon real estate,

2  shall be by deed." Wash. Rev. Code § 64.04.010; *Pardee v. Jolly*, 182 P.3d 967, 972 (Wash.

3  2008). The Washington State Supreme Court has held that "a right of first refusal . . . can create

4  an interest in property." *Manufactured Housing Communities v. State*, 13 P.3d 183, 192 (Wash.

5  2000). However, there is no Washington authority that specifically addresses whether a right of

6  first refusal is subject to the statute of frauds.

7       The Partnership argues that, because *Manufactured Housing* establishes a right of first

8  refusal as an interest in real estate, the case leads to the conclusion that a right of first refusal is

9  also subject to the statute of frauds. In support, the Partnership cites an unpublished opinion[4] of

10  the Washington Court of Appeals which held that "[b]ecause the right of first refusal acts as a

11  limitation on the use and enjoyment of property, we believe it is required to be in writing just as

12  easements and other limitations on real property must be." *Bravo Farms LLC v. Battin*, 2008 WL

13  3867162, at *2 (Wash. Ct. App. Div. III, Aug. 21, 2008). Although *Bravo* is not binding

14  Washington law, its reasoning is sound and there is no contrary authority.[5] The Court thus

15  concludes that the right of first refusal in this case is subject to the writing requirement.

16       Turning to the evidence presented, both Mr. Tahir and Thomas testified that there was

17  only an oral promise, no written agreement documenting the alleged right of first refusal. (Dkt.

18  No. 42-15 at 105–08, 120–23; Dkt. No. 42-16 at 128–33.) And the only relevant written

19  documents presented by Thomas are letters of intent from Africatown Community Land Trust

20  and Union Street Business Association to purchase the Property. (Dkt. Nos. 47-5 & 47-6.) These

21  letters do not reference any grant of right of first refusal. (*Id.*) Thus, neither Thomas's brief nor

22

23  ───────────────

24       [4] The Court can consider unpublished state decisions although they are not controlling
    authority. *Employers Inc. of Wassau v. Grants State Ins. Co.*, 330 F.3d 1214, 1220, n.8 (9th Cir.
25  2003).
       [5] The only case contradicting this holding is another unpublished Court of Appeals
26  opinion that mistakenly cites to the dissent in *Manufactured Housing*. *See Sweetser v. Tomlinson
    Black Commercial, Inc.*, 2011 WL 2176205, at *9 (Wash. Ct. App. June 2, 2011).

1    the record presents a factual dispute as to whether the right of first refusal was in writing.

2    Further, Thomas does not argue any exception to the statute of frauds requirement. (Dkt. No. 47.)

3        With only an alleged oral promise, the Court finds there is no valid right of first refusal

4    granted by Thomas to Africatown Community Land Trust or Mr. Tahir. Accordingly, the Court

5    GRANTS the Partnership's motion for partial summary judgment.

6       **C.**      **Breadth of Declaration**

7        The Partnership requests an order declaring that "there is no valid and enforceable right

8    of first refusal affecting the Property." (Dkt. No. 41 at 6.) In other words, it asks the Court to

9    broadly declare not only that Thomas failed to create a valid right of first refusal, but also that

10    "no individual or entity has such a right." (Dkt. No. 41 at 2.) However, based on the record

11    presented, the Court can only find that Thomas did not grant a valid right of first refusal to

12    Africatown Community Land Trust or Mr. Tahir. The evidence was specific to these parties and

13    the Court cannot expand it to any individual that may claim a right of first refusal was granted at

14    some point in history. While the Partnership may be eager to reap the profits from the all-cash

15    buyer in this "multimillion-dollar sale" as soon as possible, requests must stay within the bounds

16    of basic logic. (*Id.*) Therefore, the holding applies specifically to the alleged right of first refusal

17    from Thomas to Africatown Community Land Trust and Mr. Tahir.

18       **D.**      **Inappropriate to Award Fees**

19        The Partnership argues that it should be awarded fees according to state statutes and

20    Federal Rule of Civil Procedure 11. (Dkt. No. 41 at 16.) It is within the Court's discretion to

21    award fees if it finds Thomas's position was "frivolous or advanced without reasonable case" or

22    the lis pendens was filed without "substantial justification." Wash. Rev. Code § 4.84.185; Wash.

23    Rev. Code § 4.28.328(3). The Court does not make such a finding. Thomas alleged an oral

24    promise and the case law rendering that method invalid was far from crystal clear, especially

25    considering Thomas is a *pro se* third-party defendant brought into this suit by the Partnership

26    itself. The Partnership argues that sanctions are appropriate under Rule 11 because the lis

1  pendens was filed "repeatedly and abusively." (Dkt. No. 41 at 16.) However, it fails to show a

2  history of abusive filings of lis pendens. The fact that Thomas filed a prior lis pendens based on a

3  related state court action does not render this lis pendens abusive. (Dkt. No. 41 at 3–5). The

4  Court DENIES the Partnership's request for fees.

5  **III.    CONCLUSION**

6        For the foregoing reasons, the Partnership's motion for partial summary judgment (Dkt.

7  No. 41) is GRANTED and the lis pendens filed on the Property by Thomas Bangasser shall be

8  canceled.

9        DATED this 14th day of September 2016.

10

11

12

13

14

15

16  John C. Coughenour
     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT
PAGE - 8