THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMARI TAHIR,<br><br>        Plaintiff,<br>    v.<br><br>MARGARET DELANY, *et al.*,<br><br>        Defendants. | CASE NO. C15-2017-JCC<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 92). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

In 1992 or 1993, Defendant Midtown Center, LLC borrowed $3.2 million in Community Development Block Grant (CDBG) funds to acquire properties in Seattle. (Dkt. No. 93-1 at 6.) These funds were obtained from the city of Seattle, but were part of a grant from the federal government. (*Id.*) The CDBG funds were paid back to the City around 2000. (Dkt. No. 93-1 at 7.)

In 2002, Defendant Midtown bought property in Seattle's Central District, which included a house on Spring Street (Spring Street House). (Dkt. No. 94-1 at 1; Dkt. No. 94 at 2.)

1  Defendant Midtown purchased Spring Street House intending to demolish it to create additional
2  parking for another one of its tenants. (Dkt. No. 93-1 at 3.) However, Spring Street House was
3  not demolished because the tenant did not need the parking. (*Id.*)

4  Around 2008, Plaintiff moved into Spring Street House. (Dkt No. 93-1 at 10.) Plaintiff
5  paid no rent. (Dkt No. 93-1 at 3–4, 10–11.) Instead, he helped keep the surrounding property
6  clean and safe. (*Id.*)

7  In 2015, Defendant Midtown's partners voted to oust the then managing partner, Thomas
8  Bangasser, and replaced him with Defendant Margaret Delaney. (Dkt. No. 94 at 2.) Defendant
9  Midtown then began the process of selling Spring Street House and the surrounding properties.
10 (Dkt. No. 92 at 6.) On or around March 15, 2017, following several court proceedings and
11 disagreements between the parties, Plaintiff was evicted from Spring Street House. (Dkt. No. 92
12 at 5; Dkt. No. 94 at 3.) Defendants then sold Spring Street House and the surrounding properties.
13 (Dkt. No. 92 at 6.)

14 Prior to his eviction and the sale of the property, Plaintiff filed a lawsuit in this Court
15 alleging a number of different claims. (Dkt. No. 4.) Some of Plaintiff's claims have been
16 addressed in various orders by this Court, leaving only the Title VI, assault, and defamation
17 claims. (*See* Dkt. Nos. 18, 33, 46, 54, 70, 90.) Plaintiff alleges that Defendants discriminated
18 against him by denying him basic benefits that they afforded white tenants, thereby violating
19 Title VI, 42 U.S.C. § 2000d, *et seq*. (Dkt. No. 4.) Plaintiff also alleges Defendant Delaney
20 assaulted and defamed him. (*Id.*) On June 14, 2017, Defendants moved for summary judgment
21 on these claims. (Dkt. No. 92.)

## II. DISCUSSION

### A. Summary Judgment Standard

24 "The court shall grant summary judgment if the movant shows that there is no genuine
25 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
26 Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable

inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**B. Title VI Claim**

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. For a plaintiff to prevail on a Title VI claim, one threshold requirement is that the defendant is currently receiving federal funds. *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (overruled on other grounds). Additionally, "to prevail on a Title VI claim . . . a plaintiff must prove (1) that he is an 'intended beneficiary of the federally-funded program the defendants . . . 'participated in,' . . . and (2) that the defendant intentionally discriminated against him in violation of the statute." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1050 (E.D. Cal. 2010).

<u>1. Federal Assistance</u>

Here, both parties are generally in agreement that Defendants received $3.2 million dollars in federal funding and that the funds have been repaid. (Dkt. No. 93-1 at 6; *see also* Dkt.

No. 96 at 7.) Plaintiff alleges there is a dispute as to when the funds were repaid. (Dkt. No. 96 at 7.) However, Plaintiff's assertion does not create a genuine issue of *material* fact, because Plaintiff fails to offer support, or even allege, that Defendants were receiving federal funds at the time of the alleged discrimination, 2008–2016.[1] (*See* Dkt. No. 96 at 7.) His supporting declarations and response to Defendants' motion for summary judgment all lack specific facts. (*See* Dkt. Nos. 4, 96, 97.) Further, Plaintiff does not deny that the loan was paid off before he moved into Spring Street House. (*See* Dkt. No. 96 at 7.) Plaintiff's Title VI claim is fatally deficient without a sufficient showing that Defendants were receiving federal financial assistance at the time of the alleged discrimination.

2. Intended Beneficiary

Further, Plaintiff lacks support for his assertion that he was an intended beneficiary of the federal monies received by Defendant Midtown. Although Plaintiff cites to a recent declaration by Thomas Bangasser to support his argument, the declaration is missing an exhibit and Plaintiff has provided no context for the content. (*See* Dkt. No. 98.) The Court will not speculate as to what may be in the missing exhibit attached to Thomas Bangasser's most recent declaration. However, to the extent that the missing report may indicate the 1992 CDGB funds were intended for community development, it cannot provide the nexus between the federal monies and Plaintiff. As noted above, Spring Street House was purchased after the monies were paid back, and Plaintiff moved in more than five years later. (Dkt No. 93-1 at 3–4, 10–11.) Plaintiff is unable to provide the necessary link between the federal funds and the Spring Street House, or his time spent living there.

To prevail on a Title VI claim Plaintiff must prove all elements of the claim. *See Clarke*, 703 F. Supp. 2d at 1050; *Davison ex rel. Sims v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d

---

[1] Plaintiff's Title VI claim is fatally deficient for the reasons laid out in this order. However, it is important to note that Defendant Delaney cannot be sued as an individual or in her official capacity under Title VI. Title VI only offers a right of action against entities. *Walden v. Moffett*, 2006 WL 947738, at *9 (E.D. Cal. Apr. 12, 2006).

1225, 1229 (C.D. Cal. 1998). Because Plaintiff has failed to make a sufficient showing that Defendants were receiving federal financial assistance and that he was the intended beneficiary of the federal funds, the Court need not consider the racial discrimination element. Accordingly, Plaintiff's Title VI claim is DISMISSED with prejudice and Defendants' motion for summary judgment is GRANTED.[2]

### C. State Law Claims

"The district courts may decline to exercise supplemental jurisdiction" over state law claims, if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Here, because Plaintiff failed to properly allege a Title VI claim, the Court no longer retains original jurisdiction over the remaining state law claims. Therefore, the Court declines jurisdiction over Plaintiff's state law causes of action. All remaining claims are DISMISSED without prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 92) is GRANTED. Plaintiff's Title VI claim is DISMISSED with prejudice and his remaining state law claims, assault and defamation, are DISMISSED without prejudice.

DATED this 8th day of August 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff requests the Court allow him additional time to find representation in this matter. (Dkt. No. 97 at 2.) However, it is improper to grant this request because Plaintiff's claim is incurably deficient.